UNITED STATES, for Use of WADEFORD ELECTRIC CO., v. E. J. BIGGS CONST. CO., Inc., et al. (two cases).

Nos. 7243, 7244.

Circuit Court of Appeals, Seventh Circuit.

Dec. 6, 1940.

Rehearing Denied Jan. 14, 1941.

Philip R. Toomin, of Chicago, Ill., for appellants.

Edmund Burke and Chas. H. Jackson, both of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This action was brought by the United States of America for the use of Wadeford Electric Company, (hereinafter referred to as the "beneficial plaintiff") against E. J. Biggs Construction Company, (hereinafter referred to as the "defendant contractor") to recover the sum of $4,340 upon a contract entered into by and between the beneficial plaintiff and the defendant contractor. The United States Guarantee Company was joined as a party defendant by reason of the fact that it was surety for the defendant contractor. The matter was referred by the trial court to an auditor who heard the evidence and reported conclusions. A judgment order was entered October 16, 1939, in favor of the beneficial plaintiff for $2,817.97, from which both parties have appealed.

The contract relied upon was entered into October 14, 1933, wherein and whereby the beneficial plaintiff, as a subcontractor, agreed to furnish the material and labor to complete the electric work required by a certain contract dated September 15, 1933, which the defendant contractor had with the United States Government. There was excepted from the contract between the beneficial plaintiff and the defendant contractor certain designated items, not here material, which were to be furnished by the latter, but installed by the former.

█ The controversy revolves largely around the proposition asserted by the beneficial plaintiff—denied by the defendant contractor—that the former substantially performed its contract and was, therefore, entitled to recover as therein provided. The auditor found against the beneficial plaintiff in this respect, which finding was incorporated in the judgment entered by the court. If the question of substantial performance is one of fact, it is binding upon us if supported by substantial evidence. We are of the opinion, however, that inasmuch as it involves a construction of the contract, it is a question of law rather than of fact, or, at any rate, is a mixed question of law and fact. This view finds support in Errant v. Columbia Western Mills, 195 Ill.App. 14, 15, and Keeler v. Herr et al., 157 Ill. 57, 41 N.E. 750. The latter case was a suit upon a builder's contract tried to a jury. The trial court left to the jury the question as to whether there had been substantial performance as claimed by the plaintiff. On page 59, of 157 Ill., on page 750 of 41 N.E., the court said: " * * * We think [the instructions] are erroneous, both because they allow plaintiffs to recover the full contract price upon proof of a 'substantial performance' of their contract, and because they submit to the jury the question of performance, without any construction of the contract by the court. * * *"

Since the question is one of law, we think we are obliged to construe the contract, unhampered by the finding of the auditor and the court below.

The argument of the defendant contractor that there was no substantial performance includes three contentions: (1) The beneficial plaintiff failed to start work in proper time, (2) failed to complete within the time prescribed, and (3) failed to perform in accordance with the terms and specifications of the contract.

█ In determining the question of substantial performance, it is necessary to consider the contract between the beneficial plaintiff and the contracting defendant, as well as the contract between the latter and the Government. Here must be found the obligations imposed upon the plaintiff as to the time when performance was to be commenced and completed, as well as its manner. The only provision in the contract between the beneficial plaintiff and the defendant contractor directly relating to either the time of starting or completing the contract is that contained in Article 4: "The entire work to be completed on or before December 31, 1933." In the same article, the defendant contractor agrees to install the machinery in the buildings and have them ready for the electrical work by December 15, 1933, otherwise the time of completion by the

beneficial plaintiff was to be "extended accordingly." This contract also provides, in effect, that the beneficial plaintiff will relieve the defendant contractor of all responsibility assumed by it in the latter's contract with the Government, and that "the terms of payments, forfeiture for noncompletion of contract on time, and all rights of the United States Government, owners, on said work, especially as to proper material, workmanship, and progress of work, shall be as stated in the contract between the owner and the contractor." There is no claim on the part of the defendant contractor that there is any obligation imposed by its contract with the beneficial plaintiff as to the time when performance was to be commenced, but it is asserted that the beneficial plaintiff was bound by the former's contract with the Government. We think this argument is sound and we, therefore, turn to the Government contract with a view of ascertaining what, if any, obligation is imposed upon the beneficial plaintiff as to the time it is to commence performance, as well as the progress to be made relative to that made by the defendant contractor in the performance of its contract with the Government.

Articles 1 and 9 of the Government contract contain the only references as to time of commencement and progress of the work. Article 1 provides: "* * * The work shall be commenced within ten (10) calendar days after date of receipt of notice to proceed * * * and shall be completed within one hundred twenty (120) calendar days after date of receipt of notice to proceed." Article 9 provides: "If the contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in Article 1, or any extension thereof, or fails to complete said work within such time, the Government may, by written notice to the contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. * * *" Defendant contractor also calls our attention to Article 16 which, in substance, requires the contractor to employ an ample force of men to complete the contract within the specified contract period. It appears plain from these provisions that the defendant contractor was obligated to commence work within ten days after notice to proceed, and that in case of failure to prosecute the contract, or any part thereof, with diligence within the specified time, that the Government had the right by written notice to terminate the contract. It is not claimed, and there is no evidence, so far as we can ascertain, that the beneficial plaintiff at any time had any notice, written or otherwise, as to when it was to commence the performance of its contract or the progress required.

The defendant contractor, under its contract with the Government, was not obligated to commence performance until ten days after receipt of notice from the Government, and it was only by written notice that the Government had a right to terminate the contract for failure to perform with diligence. It is difficult to think that any greater obligation could be, or was, imposed upon the beneficial plaintiff than that imposed upon the defendant contractor. It may be that either the Government or the defendant contractor had the right under this contract, by written notice, to determine the time when the beneficial plaintiff was to commence performance, and also the progress required, but in the absence of such notice, there was, in our opinion, no obligation upon the beneficial plaintiff to commence work at any certain time, or that the work progress in any certain manner except that the contract be completed by December 31, 1933, or within such extended time as might be granted.

It appears that a considerable portion of the work to be done by the beneficial plaintiff was outside of the boiler houses in extending lines to carry the electricity from dams to the boiler houses. It is argued by the defendant contractor that this work could have been done at an early date, and that the beneficial plaintiff would then have been in a position to do the work required in the boiler houses within a few days after their completion by the defendant contractor. This appears to be a logical assertion, and perhaps if the beneficial plaintiff had performed its work in this manner, it would have been of advantage to the defendant contractor. It does not follow, however, that the beneficial plaintiff was obligated by its contract to commence at a certain time or to progress in a certain manner. To hold otherwise is to read into the contract that which was not inserted by the parties.

We have not overlooked the contention made by the defendant contractor

that it warned the beneficial plaintiff on November 18, and December 6, 1933, that it was in arrears in the performance of its contract. Such warnings, even if material, are not borne out by the record. The alleged warning of November 18, is contained in a letter from the defendant contractor to the beneficial plaintiff. There is nothing in this letter which even suggests a complaint on the part of the former. It merely suggests that on account of unseasonable weather "we will all have to push the work in order to come out on time." Certainly, at that time the defendant contractor had no thought that the beneficial plaintiff had not commenced performance in time, or that its progress was out of proportion to that being made by the defendant contractor. Neither do we find anything in the record which substantiates the claim that a warning was given December 6. In support thereof, there is cited plaintiff's Exhibit 6 which is a letter dated January 12, 1934, from the defendant contractor to the beneficial plaintiff, calling attention to the terms of the contract requiring completion within two weeks after placing of the equipment, and that such time might not be sufficient. Defendant contractor also points out that the beneficial plaintiff made an oral promise as to a commencement and progress of work under the contract. It appears, however, that any promise in this respect was made prior to the execution of the written contract, and by failure to incorporate it therein, we are of the opinion that it is of no effect.

The contention that there was a failure to substantially complete the work within the specified time has little, if any, merit. To relate all the details which it is claimed have a bearing upon this point would unduly prolong our discussion. The hearing before the auditor commenced April 15, 1937, more than four years subsequent to the time when the contract was to be completed. A reading of the testimony is rather convincing, we think, that too much stress was placed upon photographs purporting to show the result of the performance by the beneficial plaintiff, rather than the statements, acts and conduct of the contractual parties, including the representatives of the Government. Such statements, acts and conduct are of a convincing nature, not only that the contract was substantially performed insofar as the time element was concerned, but also in respect to the manner and character of such performance. In the first place, the defendant contractor never notified the beneficial plaintiff prior to February 11, 1934, (the extended time for completion) of any failure to comply with the contract. As pointed out heretofore, it had the right by written notice to terminate the contract for non-compliance. This it sought to do by its letter dated February 21, 1934, wherein attention was called to the right of cancellation upon written notice. This letter, among other things, states: "While the amount left to be done in proportion to the whole contract is small never the less we have decided to cancel your contract effective immediately and will complete the balance of the work ourselves charging the same to your account."

Here is a statement which comes near to conceding substantial performance. There evidently was no thought but that the beneficial plaintiff was entitled to the agreed price less any expenditures required in completing the contract.

The War Department had jurisdiction over the projects, and there was introduced in evidence copies of a number of documents from its files which are consistent with, and strongly support, the position of the beneficial plaintiff. One such exhibit is a schedule of work done by the defendant contractor, including that to be performed by the beneficial plaintiff, on the boiler house at Starved Rock Lock up to February 9, 1934, which estimates the work done at 100 per cent. There is attached to this exhibit the following certificate:

"I hereby certify that I have carefully inspected the above work; that it is in accord with the specifications and contract; and that the quantities are correct as shown by official measurements, and that the work herein estimated for the month of February, 1934, has not been reported or paid for on any previous estimate.

"(Signed) Basil E. Boren,
"Lockman."

Appended to said certificate is the following:

"I certify that I have examined the above estimate and that it is correct.

"(Signed) E. H. Beechley,
"Senior Engineer."

The signature of C. R. Andrew, Principal Engineer, also appears upon this exhibit. Another exhibit contained a similar estimate of work done at Dresden

Island Lock as of February 8, 1934. The same certificate is attached to this exhibit as the former, except it is certified and signed by different Government officials. Both of these exhibits also contain the certificate of E. J. Biggs, President of the contracting defendant, that the statements are correct.

■ The Government made payment to the defendant contractor at various times as the work progressed, each time retaining 10 per cent until final completion. These retentions on the two projects amounted to the sum of $1,660. On March 5, 1938, E. J. Biggs, President of the defendant corporation, in making claim for payment, certified: "I certify that the above bill is correct and just and that payment therefor has not been received."

This voucher was designated "final payment under contract." The bill was approved for payment by certain named engineers of the War Department and was paid to the defendant contractor on May 10, 1934. There was also attached to this exhibit the certificate of Richard L. Smith, Captain, Corps of Engineers dated March 10, 1934, as follows: "This contract has been complied with in accordance with its terms and the services contracted for have been accepted by me as satisfactory on behalf of the United States."

The court denied admission of this certificate, although it was identified by the principal engineer of the United States Engineer's Office in Chicago, was attached to and made a part of the document, and a part of the files of the War Department. We think it was admissible.

■ Also admitted was the report, dated March 30, 1934, of E. H. Beechley, Principal Engineer, who had general supervision of both projects, to the District Engineer, in which he states: "All work was completed and accepted at Starved Rock dam with a few minor exceptions, on February 9. All work was completed at Dresden Island, with a few minor exceptions, on February 8. Mr. Floyd made inspection of the work at Starved Rock Dam on February 9 and at Dresden Island on February 10. * * *"

The defendant contractor points out numerous items which it claims had not been furnished or performed according to the contract and specifications which it had with the Government. Considered as a whole, we are of the view that they are of such minor character in comparison with the total work to be done, as not to require detailed discussion. As to some of them, there was a difference of opinion among the witnesses for the defendant contractor as to whether they met the Government specifications, and a number of them had to do with supposed defects discovered long after the contract was completed. Neither are we impressed with the argument that the defective nature of some of these items constituted a fraud upon the Government, in the absence of a claim by the Government that it had been defrauded. The thing which does impress us, and which we think further obviates the necessity for a consideration of these items in detail, is the uncontrovertible fact that the defendant contractor, who had full opportunity to familiarize itself with the character of work done by the beneficial plaintiff, as already pointed out, recognized that the contract had been substantially performed and that the officials of the War Department, in the discharge of their official duties, gave similar recognition. We are mindful of the fact that there is some testimony which supports the position of the defendant contractor, but we think, without doubt, that it preponderates strongly to the contrary. We therefore conclude that all of the contentions made by the defendant contractor disputing substantial performance must be denied.

■ Defendant contractor also seeks to escape liability on the contention that the beneficial plaintiff failed to comply with Article 3 of the contract, which provides: "That an approval of his work shall be furnished from the owner by the sub-contractor before the contractor makes final payment."

It is conceded by the beneficial plaintiff that no such certificate was obtained by it from the Government and furnished the defendant contractor. This provision, no doubt, was for the benefit and protection of the defendant contractor, but it is difficult to see how it can have any application in the instant situation. The Government approved and accepted the work of the defendant contractor, including that performed by the beneficial plaintiff, and paid the defendant contractor accordingly. It would appear that the defendant contractor would have been in no better position had it received the Government's approval of the work performed by the beneficial plaintiff through a certificate issued direct

to the latter, than with the approval of the Government given directly to the defendant contractor. Whether or not our view in this respect is correct, however, we think the defendant contractor waived this provision. So far as we can ascertain from the record, refusal to pay was, at no time prior to the hearing, based upon such a contention.

Our conclusion that there was substantial performance on the part of the beneficial plaintiff is largely determinative of the various items which the court allowed the defendant contractor by way of recoupment. In this connection, we think it also follows that the letter sent to the beneficial plaintiff by the defendant contractor under date of February 21, 1934, did not have the effect of cancelling the contract. As pointed out heretofore, there had been, prior to that time, general recognition by all the parties of substantial performance. The rule governing such a situation is aptly stated in City of St. Charles v. Stookey, 8 Cir., 154 F. 772, 776: "* * * It is only when the parties to the agreement can be placed in statu quo that one may rescind and repudiate or defend against an action for the performance of the entire contract on account of the failure of the other to completely fulfill his portion of it. * * *"

In this case the court, on the same page, also announces a rule with many authorities cited in its support, applicable to the rights of the parties where there is substantial, but not complete, performance. The rule, as announced by the court, follows: "* * * In order to avoid such an injustice, the party who has substantially performed may enforce specific performance of the covenants of the other party, or may recover damages for their breach upon an averment of performance, without proof of complete fulfillment, while the other party, on the other hand, may by an independent action before he is sued, or by a counterclaim after commencement of a suit against him, recover from the first party the damages which he has sustained by the latter's failure to completely fulfill his covenants. * * *"

Considering the various items included in the judgment order, it may be pertinent, although it would seem hardly necessary, to consider the contention of the beneficial plaintiff that none of the items sought to be recouped by the defend-ant contractor is allowable for the reason that the answer was not designated as a counter claim in conformity with Section 38 of the Illinois Civil Practice Act, Ill. Rev.Stat.1939, c. 110, § 162. While it is true the answer was not so designated, it set forth the various items for which it was claimed a set-off or recoupment should be allowed. The plaintiffs raised no question as to the form of the pleading, but took issue with the allegations of the answer concerning set-off and recoupment. We think going to trial without raising the question as to the form of the pleading, amounts to a waiver, and we so treat it.

We now come to a consideration of the judgment order as it applies to the various items allowed the contractor defendant as deductions from the contract price. The latter was in the amount of $5,700, upon which the sum of $1,360 had been paid, leaving a balance due the beneficial plaintiff, according to its contention, of $4,340.

Paragraph A has to do with expense incurred by the defendant contractor in a final completion of the contract. The total amount of this expense is $325.63, plus $48.84, the latter amount being 15 per cent of the former as provided by Article 6 (c) of the contract. The items included in this expenditure are comparatively small in amount and we shall not discuss them individually. It is sufficient to state that even though there is a serious dispute as to some of them, we think there is evidence to support the finding of the court, and that they were properly allowed as a deduction.

Paragraph C of the judgment order allowed a deduction from plaintiff's claim in the sum of $912.65, plus 15 per cent of said item in the amount of $136.90. The items included in this paragraph consist of damages incurred by the defendant contractor by reason of the alleged failure of the beneficial plaintiff to keep an adequate supply of men at work, and also for damages for the failure of the beneficial plaintiff to make adequate progress in the performance of its contract. As stated by the defendant contractor in its brief, the damages awardable by this paragraph are the result of the failure of the beneficial plaintiff to commence the work as provided by the contract. Inasmuch as we have held against this contention, it follows that the items in this paragraph were improperly deducted from the claim of the beneficial plaintiff.

Paragraph E contains deductions allowed in the amount of $734.20. The items in this paragraph represent damages which the defendant contractor claims it sustained when it was required to waive its claim against the Government for such items in order to obtain payment of its contract price with the Government. These items are based on the theory that the beneficial plaintiff did not substantially perform its contract within the time specified or as extended. Inasmuch as we have decided against this contention, if follows that the items contained in this paragraph should not have been deducted.

It follows from what we have said that plaintiff was entitled to a judgment in the amount of $3,965.53 (the amount sued for less the items mentioned in Paragraph A) together with interest thereon at the rate of 5 per cent per annum from the 11th day of March, 1934.

One other matter requires consideration, and that concerns the taxing of costs. The auditor recommended that the costs be taxed two-thirds against the plaintiff and one-third against the defendants. The court taxed all the costs against the defendants. There seems to be no question but that prior to the adoption of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the costs followed the result of the litigation. Ex parte Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919. It is argued by the defendants, however, that the holding in the Peterson case has been changed by Rule 54(d) which lodges in the court a discretion as to the taxing of costs. This contention appears plausible if the rule applies. The suit was filed November 22, 1934, and the record discloses that the defendants offered the beneficial plaintiff the sum of $3,800 in settlement of its claim. There was no legal tender made, but the court found that an offer was made in excess of the amount for which the beneficial plaintiff was awarded judgment. The trial of the cause commenced April 15, 1937, and the Rules of Civil Procedure became effective September 16, 1938. The first report of the auditor was filed January 12, 1939, his amended report on February 25, 1939, and judgment entered October 16, 1939. The record also discloses that all the testimony was taken, and it would seem logical to assume that most of the costs had been incurred prior to the effective date of the rules. Defendants rely upon Rule 86, which, after fixing the effective date of the rules, makes them effective as to "all further proceedings in actions then pending." It appears that the auditor's report, and the judgment of the court, including the taxing of costs, clearly come within this phrase, and we are of the opinion there was vested in the court a discretion with reference to the taxing of costs, and that the rule of the Peterson case was not controlling. This brings us to the question as to whether we should interfere with the discretion as exercised by the court. Here is a situation where the beneficial plaintiff was offered $3,800 in settlement of a claim for $4,340. That plaintiff had a complicated claim was readily apparent, and that a trial would result in long and expensive litigation, was equally obvious. The offer as made by defendants indicates an earnest effort to compromise and avoid litigation. Of course, the plaintiff had a right to refuse the offer and to litigate to its heart's content. In doing so, however, we think it is fair and just that it sustain at least a part of the burden of the litigation instituted and carried on under such circumstances. It is our judgment that each of the parties should be, and they are, taxed with one-half of the costs.

The judgment of the District Court is therefore reversed and remanded with directions to enter a judgment in conformity with the views herein expressed.