Fidelity and Casualty Company of New York, Appellee, v. Heitman Trust Company, Appellant.

Gen. No. 41,992.

Opinion filed December 30, 1942. Rehearing denied January 20, 1943.

HERSHENSON & HERSHENSON and JAMES B. MCKEON, all of Chicago, for appellant.

WILLIAM SHAPIRO and MALCOLM MECARTNEY, both of Chicago, for appellee; JAMES J. KILGALLON, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Heitman Trust Company appeals from a decree of the superior court which required it to pay the Fidelity & Casualty Company of New York, as surety on a guardian's bond, the sum of $23,114.59, representing principal and interest paid by plaintiff as subrogee to the rights of the ward for losses incurred through the sale by defendant to the guardian's estate of defaulted bonds, which were held to constitute a participation by defendant in a breach of trust and a fraud upon the probate court, and to accept from plaintiff, upon payment of said sum, the bonds which had been purchased from defendant by the guardian of the estate.

There is substantially no dispute as to the salient facts alleged in the pleadings and disclosed upon the hearing before the master, to whom the cause had been generally referred. Anna C. Loker, who died December 1, 1924, by will directed that Elizabeth Kilbert be appointed guardian of the person and estate of Mrs. Loker's daughter, Wilma E. Kinney, who was then a minor. As such guardian, Elizabeth Kilbert executed a bond, with plaintiff as surety, and took possession of the assets constituting the minor's estate, which consisted principally of various secured notes aggregating

some $35,000. Upon retirement of matured securities and in fulfilment of her duties as guardian to reinvest the moneys accumulated in the estate, Elizabeth Kilbert purchased from Heitman Trust Company numerous first mortgage bonds, issued and underwritten by defendant on various apartment buildings in Chicago. From the time she qualified as guardian on January 12, 1925, until she was discharged March 25, 1933, she dealt with and reinvested the moneys of the estate with the Heitman Trust Company, acting through its principal officers Fred P. Heitman and Philip C. Lindgren, both of whom knew that the investments of the guardian were made with the estate funds for the purpose of the estate and as part of the duties of the guardian. In making these purchases she presented to the probate court from time to time a series of petitions alleging that she had on hand various sums belonging to the minor and asking leave to invest the available amounts in bonds of specified apartment buildings on which the Heitman Trust Company had underwritten the entire issue. All these petitions, although ostensibly presented by the guardian, were prepared in the office of Heitman Trust Company from information furnished by one of its officers, and filed by one of its representatives in the names of various attorneys whose names appeared on the petitions and orders, without their knowledge or consent. In each instance the petition, signed and sworn to by the guardian, purported to allege the then value of the apartment building in question, its outstanding indebtedness and the annual rental thereof, and representations were made that the property was ample security for the loan outstanding and that such loan did not exceed one half the value of the real estate securing it. By means of these petitions the guardian had leave to invest in securities aggregating $24,000.

Wilma E. Kinney attained her majority November 23, 1932, and March 24, 1933, the guardian presented

and filed her final account in the probate court, which was duly approved. After being discharged from her official duties, she turned over to her ward the assets of the estate, consisting of the various bonds purchased from Heitman Trust Company, for which the ward gave the guardian a written receipt. On the following day the ward executed a power of attorney to her former guardian, which was prepared and executed in the office of the Heitman Trust Company, giving her power to collect principal and interest on said bonds while the former ward was away at school. That power of attorney was revoked April 10, 1934, and notice of the revocation was communicated to Heitman Trust Company by letter of that date.

Following the approval of the guardian's final account and while Elizabeth Kilbert was acting under the power of attorney executed by her former ward after she attained her majority, the guardian and ward executed some seven forbearance agreements addressed to Heitman Trust Company, substantially in the same form, all written on the letterheads of Heitman Trust Company and prepared and signed in its office, extending the maturity of payments due under various bond issues. The master and the decree found that the bonds mentioned in the forbearance agreements were in default at the time the agreements were made, but that Wilma E. Kinney had no knowledge of such defaults, and the record sustains these conclusions.

After the ward had attained her majority, Heitman Trust Company made certain payment of principal or interest, or both, on bonds which had previously been turned over to her as part of the securities to which she was entitled and which had been purchased by her guardian, while she was still a minor. Those payments were evidenced by checks of Heitman Trust Company in various amounts, payable to the order of Elizabeth Kilbert, indorsed by her and Wilma E. Kinney and the proceeds paid to the latter as income.

Following these various transactions, Wilma E. Kinney on December 20, 1933 filed her complaint in the superior court against Elizabeth Kilbert, Fidelity & Casualty Company of New York and Heitman Trust Company (hereinafter referred to as suit No. 591291), claiming that the petitions presented by her former guardian to the probate court for leave to purchase bonds from Heitman Trust Company, containing allegations as to the examination of the improved property by the guardian and the value of each parcel covering the particular bond issue purchased, were not true and were made for the purpose of deceiving the court in obtaining leave to purchase said bonds from Heitman Trust Company, thereby causing great losses to the minor's estate. Heitman Trust Company, Elizabeth Kilbert and the surety filed answers denying liability, and issue being joined the cause was referred to a master in chancery, before whom some testimony was taken. However, before the hearing was concluded, the surety company, responding to its liability as surety for losses sustained by the minor's estate through hazardous investments by the guardian, made a settlement with Wilma E. Kinney for $24,000, paid the master $500 as fees, and received from Wilma E. Kinney all the bonds and mortgages which had been turned over to her by her guardian. Plaintiff's solicitor thereupon moved for leave to dismiss the suit, and such order was entered accordingly. Shortly thereafter, January 29, 1935, and before the suit at bar was filed, the surety company made a tender to Heitman Trust Company of all the bonds and mortgages which it had received from Wilma E. Kinney as part of the settlement, with a demand that Heitman pay it the sum of $24,500. The demand and tender were refused and this suit followed.

Following dismissal of that proceeding, Wilma E. Kinney on January 24, 1935 filed her complaint in the superior court of Cook county against Philip C. Lind-

gren, Fred P. Heitman and Heitman Trust Company, alleging breach of trust on their part with respect to certain trust agreements, and claiming specifically that Heitman Trust Company had sold bonds to Lindgren and Heitman, who were trustees for Wilma E. Kinney, which were already in default and with knowledge that said acts constituted breaches of trust. By way of defense, Heitman Trust Company took the position that after Wilma E. Kinney had attained her majority she executed and delivered to Elizabeth Kilbert, her aunt and former guardian, the power of attorney hereinbefore mentioned, and thereafter, by accepting principal and interest payments on certain securities and agreeing to extensions as to others, confirmed all the transactions entered into by her guardian with defendants. That cause was also referred to a master in chancery, and thereafter on November 12, 1937 a decree was entered in favor of Wilma E. Kinney against Heitman Trust Company and others. An appeal was taken to the Appellate Court (*Kinney v. Lindgren*, 296 Ill. App. 635 (Abst.), which reversed the decree in June 1938 and remanded the cause to the superior court. The reversing order was predicated upon the execution of the power of attorney given her aunt by Wilma E. Kinney, the signing of seven separate letters or documents characterized as ''forbearance'' agreements, and the acceptance of principal and interest payments by Wilma E. Kinney from defendants, all of which were held to constitute acts of ratification. Upon remandment, the superior court refused to set the cause down for hearing, and entered a decree against Wilma E. Kinney, who perfected a second appeal to the Appellate Court (*Kinney v. Lindgren*, 300 Ill. App. 610 (Abst.). The court considered itself bound by its first opinion and affirmed the decree, except for the item of trustees' fees, which were waived. Wilma E. Kinney thereupon had leave to appeal to the Supreme Court, where an opinion was filed in February 1940,

reversing the Appellate Court and holding in effect that the signing of receipts did not amount to a ratification of the trustees' acts, since she could make no ratification until she attained her majority, and thereafter a full disclosure of the facts, with knowledge of her rights, would have to be shown. The court also affirmed the well established doctrine that a trustee stands in a fiduciary relation, and in the absence of express authority he can neither sell trust property to himself nor buy property for the trust estate from himself or from a company in which he has a substantial or controlling interest or in which he is a principal officer, the consideration paid and his good faith being immaterial, and that the transaction will be set aside even though it would have been upheld if the dealings had been at arm's length with a third person. (*Kinney v. Lindgren*, 373 Ill. 415.)

In the instant proceeding, although the master's findings of fact support the allegations of the complaint with respect to breaches of trust and fraud practiced in the procurement of the probate court's consent to purchase bonds for the estate, he recommended dismissal of the suit on the legal theory that it was the guardian's duty to make her own investigation relative to the value and desirability of the bonds as investments, because no fiduciary relationship existed between her, the Heitman Trust Company and its officers; and that the receipt of principal and interest payments and the execution of forbearance agreements by the ward after she had attained her majority, constituted a ratification by her of all purchases made by the guardian. These legal theories were not accepted by the chancellor, however, who sustained all of plaintiff's exceptions to the master's report except those with respect to the Benjamin F. Lewis mortgage, which is not the subject of controversy here. As to that mortgage, the decree ordered that the amount of $7,000 paid by the guardian to Heitman Trust Company be

deducted from the $24,500 paid by the surety to Wilma E. Kinney, but allowed plaintiff to recover the sum of $17,500, with interest at 5 per cent from January 29, 1935, the date of the tender, to the date of the decree, making a total of $23,114.59, and ordered that plaintiff surrender to Heitman Trust Company all the bonds listed in the decree in the total principal sum of $23,300, upon payment to plaintiff of the sums found to be due it from defendant, and that in default thereof execution issue therefor.

An examination of the record leaves no substantial doubt that all the investments of the estate funds made by the guardian, were in securities purchased from Heitman Trust Company, which was the house of issue and also trustee under the trust deeds securing most of the bond issues; that when certain of the bonds were sold to the guardian, defaults had occurred in payment of principal, interest and taxes; that authorization for the purchase of all the bonds was had by means of petitions prepared by defendant from information furnished by its officers and presented to the court by its representative on behalf of the guardian, through use of the names of attorneys who had no knowledge thereof; that the petitions contained misrepresentations as to the values of the properties, the margins of securities and rentals thereof. Obviously the probate court would not have authorized the investments made if the true facts had been presented. Defendant does not seriously challenge any of these conclusions, but its defense is predicated partly on the legal theories adopted by the master and on certain other legal propositions which are argued extensively, to the exclusion of any substantial defense as to its fraudulent conduct.

Whatever doubt may have existed as to whether Wilma E. Kinney ratified the purchases made for her estate from the Heitman Trust Company, is effectively dispelled by the opinion in *Kinney v. Lindgren*, 373

Ill. 415, wherein defendant likewise contended that plaintiff had ratified the acts of her guardian, and for similar reasons. The court cited *White v. Sherman*, 168 Ill. 589, wherein the principles pertaining to ratification are aptly and forcibly stated, and held that "Appellant [Wilma E. Kinney] could make no ratification until she attained her majority, and even then a full and complete disclosure of the facts to her, with knowledge of her rights, would be necessary." The facts in the *Lindgren* case were far more favorable to the Heitman Trust Company than in the suit at bar, because when payments of interest in that proceeding were made to Wilma E. Kinney as beneficiary or to her mother as settlor, the receipts for income signed by them purported to approve all acts of the trustees. Nevertheless, the court said: "The signing of receipts by the appellant and the settlor for income which purported to approve all acts of the trustees would not, alone, be sufficient." It was held in *White v. Sherman*, that "In order to bind a *cestui que trust* by acquiescence in a breach of trust by the trustee, it must appear that the *cestui que trust* knew all the facts, and was apprised of his legal rights, and was under no disability to assert them"; that proof of knowledge on the part of the *cestui que trust* of all the facts, and the appraisal of his legal rights "must be full and satisfactory"; that "The *cestui que trust* must be shown, in such case, to have acted freely, deliberately and advisedly, with the intention of confirming a transaction which he knew, or might or ought, with reasonable or proper diligence, to have known to be impeachable"; that "His acquiescence amounts to nothing if his right to impeach is concealed from him, or if a free disclosure is not made to him of every circumstance which it is material for him to know"; and that "The trustee setting up the acquiescence of the *cestui que trust* must prove such acquiescence." In the case at bar, Heitman Trust Company makes no pretext that it or anyone

else made a "full and complete disclosure." The court in its decree expressly found that Wilma E. Kinney had no knowledge that the bond issues were in default at the time defendant sold the bonds to her guardian, or that any disclosure was made to her after she attained her majority; nor did she have knowledge with respect to the untrue representations by her guardian in petitions prepared and filed by the Heitman Trust Company in the probate court. In an effort to overcome the effect of these findings, defendant relies on certain testimony of Elizabeth Kilbert wherein she stated on cross-examination that before her discharge as guardian, she had told her ward that the bonds were in default. The record discloses that she was not referring to the defaults in the bond issues which existed at the time the Heitman Trust Company sold to her as guardian, in 1929 to 1932, bonds of such defaulted issues, but rather to defaults which occurred during the year 1932, when certain bonds matured, were not paid and remained in default. It is incredible that she knew of the defaults when she purchased the bonds, because, as defendant states, she also admitted that "she had personally bought bonds from the Heitman Trust Company of the same issues all of the time that she was buying bonds for the minor's estate, and even as late as March, 1933," and that "she certainly and selfishly would not invest her own moneys as well as a minor's moneys in bonds which she thought were unsafe." The reasonable conclusion is that even the guardian had no knowledge of the fraudulent acts of defendant and therefore could not have imparted any to her ward. Aside from this testimony, there is no evidence in the record that Elizabeth Kilbert ever had knowledge that the issues of bonds which she purchased as guardian were actually in default at the time of such purchases. Upon the whole record, the conclusion is inescapable that the findings of the decree with respect to the breaches of trust and the lack of

knowledge on the part of Wilma E. Kinney are amply sustained by the evidence; and without knowledge and full apprisal of her legal rights, Wilma E. Kinney could not have ratified the acts of her guardian.

That Wilma E. Kinney had the right to sue the Heitman Trust Company alone for participating in a breach of trust by her guardian is clearly established by the authorities. In *American Bonding Co. v. National Mechanics' Bank*, 97 Md. 598, quoting with approval *Duckett v. National Mechanics' Bank*, 86 Md. 400, the court said that " 'all persons who knowingly participate or aid in committing a breach of trust are responsible for the money and may be compelled to replace the fund which they have been instrumental in diverting. . . . There is in such instances no primary or secondary liability as respects the parties guilty of or participating in the breach of trust, because all are equally amenable.' " In *Empire State Surety Co. v. Cohen*, 93 Misc. Rep. 299, 156 N. Y. S. 935, it was held that the diversion of an "infant's property from its lawful use by the fiduciary renders the third party receiving it with knowledge or notice equally culpable as the trustee, and equally liable to the infant for any resulting loss, even though such diversion was intended to benefit the trust estate." Plaintiff's suit at bar is predicated on the theory that defendant participated in a breach of trust and fraud on the probate court which rendered defendant liable to Wilma E. Kinney, and that by reason of plaintiff's settlement with her and the assignment to it of any rights she might have had against the Heitman Trust Company, it became subrogated to her rights. But defendant argues that the party seeking subrogation must act fairly and equitably and be free from fraud, and it is urged that because the surety had a joint control agreement with the guardian, which provided that no check, draft or order for the payment of money drawn by the fiduciary should be honored by the bank

unless it was countersigned or approved in writing by one of the surety's representatives, and also because it had joint control of the contents of a safety deposit box rented by the guardian, plaintiff placed itself in the same position as the guardian, and assumed the responsibility of investigating the value and security of the bonds purchased; and its counsel say that if the guardian was negligent, so was the surety. No cases are cited to support this proposition, and we know of none so holding. Joint control agreements are usually required by the surety for its own protection, but they do not cast upon the surety any such responsibility as is here urged.

It is argued at length that the dismissal of superior court case No. 591291 by Wilma E. Kinney in consideration of the payment to her of the sum of $24,500 was *res adjudicata*. Most of the securities in which her guardian had reinvested funds of the estate had become worthless, and Wilma E. Kinney joined the surety, which was clearly liable under its contract, together with her guardian and the Heitman Trust Company, which was also liable, as defendants. Although some testimony had been adduced before the master, the case was still pending when settled, and was dismissed on motion of plaintiff's solicitor before any report was made or order entered affecting the merits of the cause. The rule is well settled that a judgment, to be a bar, must have been rendered upon its merits (*People v. Harrison*, 253 Ill. 625; *Marie M. E. Church of Chicago v. Trinity M. E. Church of Chicago*, 253 Ill. 21), and where a bill is dismissed without any consideration of the merits and before decree, as was done in this instance, "even though the order of dismissal does not contain the words, 'without prejudice,' the judgment or decree of dismissal is not *res judicata*, and constitutes no bar to a new proceeding for the same cause of action between the same parties." *Bates v. Skidmore*, 170 Ill. 233. It is urged, however, that

under section 52 of the Practice Act (ch. 110, Smith-Hurd's Ann. Stats. 1935), a plaintiff may dismiss his action after trial or the beginning of hearing only (1) upon filing a stipulation to that effect signed by the defendant or (2) on order of the court made on special motion in which the ground for such dismissal shall be set forth and which shall be supported by affidavit, and defendant's counsel say that since no such showing was made, the dismissal of the suit, based on a settlement, amounted to a disposition of the case on the merits. In spite of defendant's assertion to the contrary, there were no cross-issues between the various defendants. Prior to the passage of section 52 of the Civil Practice Act the complainant had an absolute right to have the cause dismissed at his costs and without prejudice at any time before final decree, where no cross bill had been filed. *Schaller v. Huse*, 330 Ill. 345. This right was absolute, and even where the chancellor hearing the cause had orally indicated what his decision would be and had ordered a decree to be prepared dismissing the bill for want of equity, the complainant was not deprived of his right to dismiss his bill without prejudice before the decree was filed. *Benjamin v. Manufacturers Terminal Co.*, 246 Ill. App. 590. This right was frequently abused, and it was to remedy the existing evil that section 52 was enacted. The obvious purpose of that section was to prevent a voluntary dismissal by a plaintiff where it would be unfair or unjust to the defendant to permit it. Accordingly, under the present statute, the plaintiff, before hearing, may dismiss his suit as of right, but after the hearing begins, he is required either to secure a stipulation from defendant or file a special motion in which the ground for such dismissal shall be set forth and which shall be supported by affidavit. The "ground for such dismissal" contemplated by the act simply refers to the reasons therefor. *Menard v. Bowman Dairy Co.*, 296 Ill. App. 323. Complainant's coun-

sel did neither, but simply followed the old practice of serving notice on defendants of his intended motion to dismiss the suit, and the order of dismissal was entered upon the motion without objection. If Heitman Trust Company had appeared, as it had the right to do, and objected to the dismissal for the reason that section 52 had not been complied with, the court would have undoubtedly refused to enter an order until complainant had either filed a stipulation or a special motion supported by affidavit. Such irregularities are waived by the failure of a party to object. It was so held in *People ex rel. Abraham v. Allman*, 299 Ill. App. 189, wherein it was argued that the motion on which the court acted was unsupported by an affidavit as contemplated by section 48 of the Civil Practice Act, which contains procedural requirements similar to section 52 of the statute. As in the case at bar, defendant interposed no objection, and the court held that "even though a proper affidavit were not attached, such failure . . . to object amounted to a waiver of the point." It would be otherwise, of course, if defendant had duly objected and saved such question for review. Under such circumstances we held it to be reversible error for the court to dismiss a case "over defendant's objection, except upon plaintiff's compliance with the terms of the act." *Chicago Title & Trust Co. v. County of Cook*, 279 Ill. App. 462. In any event, the failure of plaintiff to comply with the procedural provision of the act, could not have the effect of making the order of dismissal upon complainant's motion a final adjudication of that cause on its merits.

The remaining contention advanced by defendant is that the demand and tender were for an excessive amount, and therefore the court should not have allowed interest, except from the date the decree was entered. This contention is predicated upon the inclusion in the settlement, of $500 as master's fees and of the $7,000 Lewis mortgage. The law does not re-

quire a tender and demand to be made in equity where it appears that the same would be unavailing. In its amended complaint plaintiff offered to turn over to defendant the securities which it had sold to Elizabeth Kilbert upon an account being taken by the court, but defendant evidently did not see fit to accede to the request. The fact that it has litigated matters with Wilma E. Kinney arising out of the same or similar subject matter which have been the subject of four appeals, is a fair indication that defendant had no intention of making restitution for the losses incurred. The inclusion of interest was justified under the rule in equity ''to allow interest where warranted by equitable considerations,'' and to refuse it where it does not comport with justice. *McKey v. McCoid*, 298 Ill. 566. This is a case where equity clearly demands that interest be allowed. Plaintiff accepted the findings of the master and the decree of the court with respect to the Lewis mortgage and assigned no cross errors as to that item. With respect to the $500 paid to the master, it is obvious that plaintiff did not seek in this suit to collect that sum as costs in the proceeding which was dismissed, but rather as part of the sum which it had agreed to pay, and did pay, in settlement of its liability to Wilma E. Kinney, as surety. This sum, being the total loss suffered by plaintiff, limited its claim as subrogee to the amount paid, even though the claim of Wilma E. Kinney against Heitman Trust Company substantially exceeded that sum, since the bonds and mortgages sold to her guardian from 1929 to 1932 amounted to a total of $30,300.

Other points are raised, but in the light of these conclusions, they need not be discussed. We are of opinion that the decree of the superior court was proper, and it is therefore affirmed.

*Decree affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.