Exchange National Bank of Chicago, a National Banking Association, as Trustee Under Trust Agreement Dated February 28, 1950, and known as Trust No. 1475, Plaintiff-Appellant, v. Margaret E. Code and La Salle National Bank as Trustee Under Trust Agreement Dated July 13, 1956, and known as Trust No. 19368, Defendants-Appellees.

Gen. No. 47,686.

First District, Third Division.

December 9, 1959.

Rehearing denied January 28, 1960.

Released for publication January 29, 1960.

Morris S. Bromberg, of Chicago (L. Louis Karton, of counsel) for plaintiff-appellant.

Perlman, Hecht, and Chesler, of Chicago (Bernard T. Hecht and Robert A. Simon, of counsel) for defendants-appellees.

PRESIDING JUSTICE BRYANT delivered the opinion of the court.

This is an appeal by the plaintiff from an adverse ruling in an action brought for a declaratory judgment that defendants owed a duty to protect plaintiff's property from any damage which might result from excavations made on defendant's property and for an injunction to restrain defendants from excavating until assurances of such protection were given. The complaint was filed August 28, 1956, alleging that plaintiff and defendants were owners of adjoining parcels of land; that plaintiff's land was improved with a 3-story and part 4-story building; that defendants owned land on Lake Shore Drive and Division Street on which were two 3-story buildings; that the lands adjoined; that defendant Code acquired her property in December, 1955, and planned to erect a 24-story building; that she notified plaintiff that she intended to excavate and advised plaintiff to take necessary measures to protect its property. Answer was filed

on August 30, 1956, and on August 31, 1956, defendant moved that the cause be set for immediate hearing. A proceeding was had on that date and Judge Epstein, after arguments of counsel, entered an order in the Superior Court of Cook County enabling the defendant to proceed with the excavating and reserving jurisdiction for the purpose of determining the issues and the rights of the parties between themselves as to such costs of shoring up and underpinning plaintiff's property. The work was completed on or about February 5, 1957. On August 21, 1957, plaintiff filed its motion to dismiss the action voluntarily, pursuant to section 52 of the Illinois Civil Practice Act. An order was entered by Judge Sbarbaro dismissing the complaint on September 20, 1957. On September 30, 1957, defendant moved to vacate the order of dismissal and on October 23, 1957, the court vacated said order and plaintiff filed a new motion to dismiss based on the theory that the enactment of sections 10 and 11 of the Illinois Revised Statutes 1959, Chap. 70, made the questions involved in the controversy moot. On November 5, 1957, an order was entered granting leave to La Salle National Bank & Trust Co., as trustee, to become an additional party defendant and to file instanter a petition of said defendant and of defendant Code to recover the monies they had advanced to shore up plaintiff's building. On November 19, 1957, the court again denied plaintiff's motion to dismiss. On November 5, 1958, at the close of the trial of all the issues, the court entered an order in which it found that it was plaintiff's duty to shore up its own building and rendered a judgment against the plaintiff in the amount of $7,209.60.

Appellant contends that the lower court erred in vacating the order dismissing the complaint. The error is said to lie in the court's refusal to accept appellant's theory that there was no counterclaim or

385

hearing in the record which would bar appellant's right to dismiss voluntarily under section 52 of the Civil Practice Act (Ill. Rev. Stat. 1959, Chap. 110, sec. 52), which provides:

"(1) The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or his attorney, and upon payment of costs, dismiss his action or any part thereof as to any defendant, without prejudice, by order filed in the cause. Thereafter he may dismiss, only on terms fixed by the court (a) upon filing a stipulation to that effect signed by the defendant, or (b) on motion specifying the ground for dismissal, which shall be supported by affidavit or other proof. After a counterclaim has been pleaded by a defendant no dismissal may be had as to him except by his consent.

"(2) . . . ."

There was no hearing, although there had been argument of counsel and the cause was at issue. The purpose of the order was for a hearing at a future time, and if there had been a hearing, the order would have been futile.

■■■■■ In order to determine whether a counterclaim was filed, we must determine the nature of a counterclaim. In Wilson v. Tromly, 404 Ill. 307, at page 309, the court said:

"The general purpose of a counterclaim has been long understood and many times defined. It differs from an answer in that a counterclaim must state a cause of action, and it seeks affirmative relief while a defense merely defeats the plaintiff's cause of action by a denial or confession and avoidance. [citing cases]. A counterclaim is an independent cause of action. [citing cases]. As involving all of these elements, a counterclaim is usually defined as a cause of action in favor of the defendant against the plaintiff, which the defendant is authorized to litigate in

opposition to the plaintiff's claim in the same action. (25 Am. & Eng. Ency. of L., 568; 23 Stand. Ency. of Pl. & Pr., 585.) Since these were commonly understood elements of a counterclaim, as well as the definitions thereof, used prior to the adoption of the Civil Practice Act, we may strongly infer that the term is used in this sense in section 38 of that act, since it is not otherwise defined."

Appellee's pleading in answer to the complaint contained a cause of action and a prayer for recovery of the amount necessary for proper protection of appellant's property. It proceeded on the theory that there was no duty placed upon the excavating landowner to protect the adjoining property except the duty to use due care and to proceed in a workmanlike manner. Appellee's answer was a complete counterclaim except that it was not designated as such.

Section 38 of the Civil Practice Act of Illinois provides in pertinent part:

"(1) . . .

"(2) The counterclaim shall be a part of the answer, and *shall be designated* as a counterclaim. Service of process on parties already before the court is not necessary.

"(3) . . .

"(4) . . ." (Emphasis ours.)

Objection to a counterclaim contained in an answer but not designated as such must be timely. A plaintiff may not inequitably delay his objection to the form of the counterclaim to the detriment of the defendant. In Fidelity & Casualty Co. of New York v. Heitman Trust Co., 317 Ill. App. 256, at page 268, the court said:

"Prior to the passage of section 52 of the Civil Practice Act the complainant had an absolute right to have the cause dismissed at his costs and without

prejudice at any time before final decree, where no cross bill had been filed. Schaller v. Huse, 330 Ill. 345. This right was absolute, and even where the chancellor hearing the cause had orally indicated what his decision would be and had ordered a decree to be prepared dismissing the bill for want of equity, the complainant was not deprived of his right to dismiss his bill without prejudice before the decree was filed. Benjamin v. Manufacturers Terminal Co., 246 Ill. App. 590. This right was frequently abused, and it was to remedy the existing evil that section 52 was enacted. The obvious purpose of that section was to prevent a voluntary dismissal by a plaintiff where it would be unfair or unjust to the defendant to permit it."

Fairness to the defendant is the basis upon which the legislature saw fit to limit the previously unlimited right of the plaintiff to voluntarily dismiss his action. It is also the basis upon which the courts have construed the provisions of section 38, which set out the requisites of a counterclaim. In cases where the answer was defective only in that it was not designated a counterclaim, the doctrine of waiver has been applied by the courts to promote the purposes of section 52. Thus, in United States, for the use of Wadeford Electric Co., v. E. J. Biggs Const. Co., 116 F.2d 768, the court held that a subcontractor going to trial without objecting that items sought to be recouped by defendant contractor were not allowable because contractor's answer was not designated a counterclaim in conformity with section 38 of the Civil Practice Act, amounted to a waiver of the objection. In Floberg v. Floberg, 358 Ill. 626, the court held that a husband's pleading denominated by him as a "cross bill" for divorce in an action by the wife for separate maintenance constituted a counterclaim under section 38.

 In the instant case, Judge Epstein had only the complaint and the answer before him, no objection

to the form of the answer was made until one year later when the plaintiff, after the work had been completed, filed his motion to dismiss his complaint. Judge Epstein's order indicates that issue was joined on the question of which of the parties had the duty to shore the plaintiff's building. The failure of plaintiff to object to the form of the answer and counterclaim until one year after his opportunity to do so before Judge Epstein constitutes a waiver of the right to make such objection, not because he had gone to trial without raising the point, but because it would be inequitable to allow him to take advantage of the delay resulting from Judge Epstein's order to have his building shored up and then to dismiss his complaint on grounds which could have been set forth in that proceeding. It therefore appears to us that the pleading filed by the defendant was tantamount to a counterclaim, and that the lower court had no jurisdiction to dismiss the complaint after its filing except with the consent of the defendant. The dismissal entered September 20, 1957, on the petition of the plaintiff that there was no counterclaim filed which would bar the dismissal is erroneous, and the order of Judge Sbarbaro, filed on October 23, 1957, vacating such dismissal is therefor proper.

 The excavating owner owes no duty to the adjoining owner to shore up his property, but only owes the duty of using due care in the performance of the excavating. He should notify the adjoining owner that he intends to excavate and allow time in which protective measures may be taken. The adjoining landowner has a common-law right to come on his property to shore up, and the excavating owner, if he desires to shore up the adjoining property, has a similar right to go on the adjoining property. But if the adjoining property owner refuses to shore up his property after due notice and the excavation proceeds, then the excavating owner may not recover the

amount of his expenses incurred in shoring the adjoining buildings from the adjoining owner, for he would then have acted in the capacity of a volunteer. Korogodsky v. Chimberoff, 256 Ill. App. 255. In the instant case, proceeding with the protective measures for the adjoining property was neither an admission of liability nor a voluntary act on the part of the defendant. The answer which was filed to the complaint indicated that the cost of the shoring should properly be laid upon plaintiff and asked for an immediate hearing of the question. Adherence to the order of Judge Epstein delaying the adjudication of which party had the duty to shore could not serve to make the defendant a volunteer with no claim to reimbursement. Ill. Rev. Stat. 1959, Chap. 70, sec. 10 and 11, enacted on July 5, 1957, which defines the duties of adjoining landowners to shore existing buildings when excavating for improvements, may not be made to apply retroactively to this cause of action. The court did not commit error in refusing to enter judgment in favor of plaintiff.

For the reasons indicated, the rulings and judgment of the trial court are affirmed.

Affirmed.

FRIEND, J., concurs.

BURKE, J., dissents:

The defendants did not file a counterclaim. At the time of the voluntary dismissal no trial or hearing had begun. The language of the order of August 31, 1956, entered over the objection of plaintiff, shows that there had not been a hearing and that the issues would be determined at a subsequent time. The court was right in dismissing the complaint and should not have reinstated the cause. Central Ice Cream Co. v. Goldenrod Ice Cream Co., 18 Ill.App.2d 7.

Turning to a consideration of the substantive issue we note that the defendants sought to excavate and did excavate. They had no right to compel plaintiff to shore up its property. I agree with the plaintiff that under the authority of Korogodsky v. Chimberoff, 256 Ill. App. 255, the defendants owed plaintiff a duty not to negligently injure its realty when they excavated on their property, and that defendants could not make plaintiff a debtor by themselves doing the work. Defendants cannot escape the role of volunteer by seeking shelter under the order of August 31, 1956, for that order was for their benefit. Furthermore, the effect of the 1957 statute was to render moot the issues pending before the court at that time. That enactment made it unnecessary to enter a declaratory judgment.

The judgment should be reversed and the cause remanded with directions to restore the order dismissing the complaint.