FAYE MESEROLE, Special Adm'r of the Estate of David Meserole, Deceased, Plaintiff, v. LEE C. MOORE CORPORATION, Defendant (Lloyd Schoenheit Truck and Tractor Service, Third-Party Plaintiff–Appellant; Southern Triangle Oil Company, Third-Party Defendant–Appellee).

Fifth District   No. 5—85—0708

Opinion filed December 30, 1986.

John L. McMullin and Daniel J. Kordik, both of Brown, James & Rabbitt, P.C., of St. Louis, Missouri, for appellant.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Anthony P. Katauskas, and Lloyd E. Williams, Jr., of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Third-party plaintiff, Lloyd Schoenheit Truck and Tractor Service (Schoenheit), appeals from an order of the circuit court of St. Clair County which held that Schoenheit had, with court approval and without objection by third-party defendant, Southern Triangle Oil Company (Southern Triangle), voluntarily dismissed its third-party action with prejudice. We reverse and remand with directions.

David Meserole, an employee of Southern Triangle, was killed at work after being struck in the head by part of a portable oil derrick manufactured by Lee C. Moore Corporation (Moore) as the derrick was being erected by agents of Schoenheit. Faye Meserole, the special administrator of David's estate, brought a wrongful-death action arising from this accident against Moore and Schoenheit. Schoenheit, in turn, filed a third-party complaint for contribution against Southern Triangle. Both the wrongful-death and the third-party actions proceeded to a

jury trial in December 1984. Following nearly a week of trial, after Meserole's counsel had made his closing argument and after a motion for mistrial made by Schoenheit and Southern Triangle had been denied, the court recessed. When it reconvened, the judge announced to the jury that a "partial settlement" of the case had been reached between Meserole and the other parties. The court then went into recess again, after which it advised the jury members that they would not be needed at all and were excused.

What transpired during the two recesses was not recorded. No written motions, stipulations, or agreements were filed, and no orders were entered by the court. When the jury was dismissed, Southern Triangle's lawyer stated on the record, in chambers, that his client had agreed with Schoenheit to pay $250,000 in settlement of the case, but reserved its right to litigate coverage under the applicable insurance policies. He further stated that Southern Triangle and Schoenheit had agreed to relitigate at a subsequent time the issues of apportionment and insurance coverage. A representative for one of the insurance carriers involved then stated that his company denied that its coverage applied to Southern Triangle, but that it agreed to litigate or arbitrate "the coverage question as well as the apportionment question." To this, the attorney for Schoenheit remarked, "That is it. That is fine." The court then adjourned. The court's docket minutes state simply that at 1:50 p.m. on December 14, 1984, "Cause announced settled. Stipulations to follow."

The following month, Meserole's attorney petitioned for approval of the settlement between her and the other parties. According to the petition, the settlement was to be "in the nature of SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000.00)" and called for structured payments to be made over time plus an immediate cash payment of $50,000. Meserole's petition was approved by the court in an order dated February 13, 1985. In that order, the court set for further hearing the question of enforcement of a workmens' compensation lien by Southern Triangle. In a separate order issued on the same date, the court also granted Meserole's motion to dismiss with prejudice her claims against Moore. The record reveals no formal dismissal of Meserole's claims against Schoenheit or any release or covenant not to sue executed by Meserole or her attorney in favor of Southern Triangle or Schoenheit. Nevertheless, there is no dispute that Meserole received her initial lump sum payment of $50,000 and began receiving her periodic payments under the structured settlement.

In June of 1985, Schoenheit moved for an order of the court to permit it to inspect the oil derrick which killed David Meserole. At the

same time it moved for enforcement of the agreement supposedly reached between it and Southern Triangle regarding settlement of "the plaintiff's case in chief" so that "this matter may proceed with the trial of the contribution claims between the defendants." In July of 1985, Schoenheit filed a memorandum in opposition to enforcement of any workmens' compensation lien by Southern Triangle. That memorandum conceded the existence of a settlement agreement between plaintiff and Schoenheit and Southern Triangle, but denied that any agreement was reached as to enforcement of a workmens' compensation lien. Nearly three months later, Southern Triangle, in turn, filed a formal motion with supporting memorandum, requesting the court to compel Schoenheit to satisfy an outstanding workers' compensation lien which it was claiming. In its supporting memorandum, Southern Triangle contended that the settlement agreement between it, Schoenheit, and Meserole provided that it was to pay Meserole $250,000 in return for a release and discharge of all rights Meserole might have against it and Moore, and that Schoenheit agreed to make payments to Meserole, "as well as to indemnify SOUTHERN TRIANGLE for its outstanding Workmen's Compensation lien."

A hearing on all pending matters was set by the court for October 9, 1985. At that hearing the trial judge presented a detailed narrative of his understanding of what occurred when, on the final day of trial, the court recessed, the attorneys for the parties conferred, and the jury was excused. Based upon a review of the trial transcript and his personal recollection, the judge stated that after the jury had been advised of the settlement of Meserole's claims, the attorneys for Schoenheit and Southern Triangle asked him not to send the jury to lunch immediately "because the matter may be able to be completely resolved somehow." Thereafter, those lawyers came into his chambers, advised him that they did not want to proceed in front of a St. Clair County jury and would go to arbitration in Chicago and that the jury should be excused. The judge could not recall any mention having been made of possible relitigation or of the need for further proceedings on the question of apportionment or contribution until after the jury had been dismissed. In the judge's view, the only unresolved matter of concern to Schoenheit and Southern Triangle related to their insurance coverage, a matter which was not part of this litigation and which would have been pursued separately in any event. Under these circumstances, and given the advanced stage of the proceedings, the judge construed the request for dismissal of the jury as a motion for voluntary dismissal with prejudice of the third-party action to which Southern Triangle, the third-party defendant, agreed, and of which he ap-

proved.

Thereafter, Schoenheit sought leave to file another third-party complaint against Southern Triangle, but based on its findings at the October 9 hearing, the court issued a written order dated December 11, 1985, which stated:

"IT IS THEREFORE ORDERED that in December of 1984 Defendant and Third-Party Plaintiff by agreement of counsel and with the express and implied approval of this Court, and without objection by Third-Party Defendant, voluntarily dismissed all of it's [sic] claims for contribution with prejudice to refiling same in this Court, and consequently this Court does not have jurisdiction to hear allegedly pending Motions to Enforce Settlement, for Inspection, to Enforce purported Workmen's Compensation lien, or for Leave to File Third-Party Complaint."

From this order Schoenheit now appeals.

As a preliminary matter, we observe that despite the absence of evidence regarding execution of a release or covenant not to sue by Meserole in favor of Schoenheit or Southern Triangle, no claim has been made regarding the validity of the settlement of plaintiff's case in chief and no challenge has been brought to the court's order enforcing plaintiff's settlement agreement. We further note that because the settlement agreement and the payments made thereunder were not accompanied by a release or covenant not to sue, the agreement is not a bar to Schoenheit's third-party complaint by operation of "An Act in relation to contribution among joint tortfeasors" (Act) (Ill. Rev. Stat. 1985, ch. 70, par. 301 et seq.). That Act, by its terms, precludes recovery of, or a liability for, contribution only where "a release or covenant not to sue or not to enforce judgment" has been given. See Ill. Rev. Stat. 1985, ch. 70, pars. 302(c), (d), (e).

Schoenheit's principal contention on appeal is that the trial court's order is not supported by the evidence. We agree, but not for all of the reasons advanced by Schoenheit. Schoenheit's present attorney would have this court believe that his client never meant to dismiss its third-party action at all. Such a claim strains credulity. When the lawyers for Schoenheit and Southern Triangle conferred after closing arguments had commenced and agreed to ask to have the jury dismissed, they clearly meant for the present litigation to cease. Schoenheit's conduct, as the trial court correctly reasoned, could be interpreted as nothing else but a request for voluntary dismissal.

A more troubling issue is whether the dismissal of the third-party action was with or without prejudice. As previously indicated, the trial court believed, and Southern Triangle now argues, that the parties had

reached a settlement agreement which was intended to completely dispose of the third-party complaint and leave for resolution only the question of insurance coverage. The possibility that the third-party complaint was dismissed with prejudice to refiling was not, however, raised by anyone, including the court, until several months after the jury trial had been aborted. The basis for this interpretation was essentially limited to the court's recollection of what transpired prior to its dismissal of the jury. Because the predismissal conferences were not transcribed, there was no way to ascertain what exactly took place. The attorneys involved gave conflicting views of what they thought had happened, and no consensus could be reached. Although the court took contemporaneous notes, those notes were apparently destroyed and are not part of the record. What is left is a record which is, at best, highly ambiguous. The trial judge himself acknowledged that he should have asked more questions to obtain clarification of the parties' position when he was asked to excuse the jury and that the result was a very confusing legal situation.

What is evident from the record is that immediately after the jury was dismissed, the attorney for Southern Triangle stated in chambers that his client was not only reserving its right to litigate its insurance coverage, but had also agreed with Schoenheit to relitigate at a subsequent time the issue of apportionment. Schoenheit's attorney, who was present, expressly agreed with this statement. This exchange is completely inconsistent with an understanding that the third-party claim had been dismissed with prejudice, for such a dismissal would have precluded any further litigation of the apportionment issue.

Southern Triangle now suggests that contribution was no longer at issue and that the forementioned reference to apportionment pertained only to apportionment of insurance coverage, but the factual basis for its contention is no more definitive than that relied upon by the trial judge. Although Southern Triangle asserts that the parties had reached a complete and final settlement of all issues except insurance coverage, this contention is not supported by the dispute which followed regarding its claim to a workmens' compensation lien. On review of the pleadings and other matters of record pertinent to that dispute, one is left with considerable uncertainty as to whether Schoenheit and Southern Triangle had actually settled anything more than that the plaintiff should be paid certain sums and that the third-party action should not be decided at that time or by a St. Clair County jury. If Schoenheit and Southern Triangle had actually agreed on how their relative liability was to be apportioned, we see no evidence of it. Absent such an agreement, it is unclear what kind of insurance apportionment Southern Tri-

angle can be referring to.

While the events and representations of Schoenheit and Southern Triangle cannot be squared with a finding that the third-party action was dismissed with prejudice in consideration for a full settlement of all claims, they do evince an intention to dismiss the third-party complaint without prejudice to refiling later somewhere other than in St. Clair County. Schoenheit contends that a voluntary dismissal could not have been granted because the requirements of section 2—1009 of our Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1009) were not met. That statute provides that where, as here, trial has begun, a plaintiff may dismiss only on terms fixed by the court "(1) upon filing a stipulation to that effect signed by the defendant, or (2) on motion specifying the ground for dismissal, which shall be supported by affidavit or other proof." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1009.) The same conditions apply to third-party plaintiffs. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1009(b).) In this case no stipulation of dismissal was signed by Southern Triangle, no motion was filed by Schoenheit specifying the grounds for dismissal, and no terms of dismissal were set by the court. The purpose of these conditions, however, is to protect defendants (including third-party defendants) from voluntary dismissals where permitting such dismissals would be unfair or unjust. (*Juen v. Juen* (1973), 12 Ill. App. 3d 284, 286, 297 N.E.2d 633, 635.) They were not implemented for the benefit of third-party plaintiffs. Southern Triangle, the third-party defendant here, did not object to the failure to comply with section 2—1009. It did not insist on, or even mention, any of the requirements which Schoenheit now asserts were not met. Accordingly we must conclude that any irregularities in compliance with the requirements of section 2—1009 cannot be relied upon by the third-party defendant or Schoenheit. See *Fidelity & Casualty Co. v. Heitman Trust Co.* (1942), 317 Ill. App. 256, 269, 46 N.E.2d 155.

For the foregoing reasons, we find the circuit court's determination that the third-party complaint was dismissed with prejudice to be contrary to the manifest weight of the evidence. Accordingly, the judgment is reversed, and the cause is remanded for further proceedings. To avoid any further confusion in this already tangled litigation, we direct the circuit court to issue an order dismissing Schoenheit's third-party complaint without prejudice.

Reversed and remanded with directions.

JONES and KASSERMAN, JJ., concur.